**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPRINT SOLUTIONS, INC. and SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| CASSIN N. SAM a/k/a GUCCI CASSIE, IQUINDA M. CERISIER, ASHLEY ANN HENRY a/k/a ASHLEY-ANNA HENRY, SAMUEL G. COLEY, JAMILA CARRY, and JANE and JOHN DOES 1-20, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Civil Action No: 15-CV-4681

**COMPLAINT FOR DAMAGES**
**AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Sprint Solutions, Inc. and Sprint Communications Company L.P. (collectively "Sprint" or "Plaintiffs"), hereby file this Complaint for Damages and Injunctive Relief against Cassin N. Sam a/k/a Gucci Cassie, Iquinda M. Cerisier, Ashley Ann Henry a/k/a Ashley-Anna Henry, Samuel G. Coley, Jamila Carry, and Jane and John Does 1-20, (collectively, "Defendants") and state:

### INTRODUCTION

1.      Sprint sells wireless handsets and other mobile devices under the brands Sprint, Sprint Prepaid, Boost Mobile, Virgin Mobile, payLo, and Assurance Wireless ("Sprint Phones" or "Phones") for use on Sprint's wireless network at prices significantly below the wholesale price of the Phones to make them more widely accessible to consumers.  Defendants and their co-conspirators are perpetrators of an unlawful scheme (the "Handset Theft and Trafficking Scheme" or the "Scheme") to profit from the illegal acquisition and resale of new Sprint Phones,

by targeting Sprint customer accounts and by stealing the substantial financial investment that Sprint makes in its Phones, for their own profit and to the detriment to Sprint and its customers.

2.     Defendants and their co-conspirators acquire the new Sprint Phones through various methods, predominantly through account fraud, but also, on information and belief, through the use of "runners," "credit mules,"[1] and mobile device theft. As part of the Handset Theft and Trafficking Scheme, the Phones, which may be purchased and sold multiple times, ultimately end up in the hands of someone other than the consumer with whom Sprint has a business relationship. Along the way, the Phones are "unlocked" so they will operate on a wireless network other than Sprint's. Often the ultimate user of the phone is located overseas, in a country where the wireless service provider does not underwrite the cost of new phones.

3.     Defendants' Scheme takes advantage of the relationship between Sprint and its customers, including the fact that Sprint allows its customers to place equipment and service orders on their accounts, and that Sprint invests in its Phones to reduce the costs for its consumers, wireless service providers in other countries do not do the same. Defendants use fraud and egregious misrepresentations to defraud Sprint and its customers—stealing equipment and service. By obtaining the Sprint Phones under false or fraudulent pretenses from Sprint and diverting them to other markets where phones are not subsidized, the Scheme converts Sprint's investment dollars into profits for Defendants and their co-conspirators. Although Defendants may participate in less than all of the steps in the process of diverting Sprint Phones, each of Defendants' acts is a violation of Sprint's rights and causes significant damage to Sprint.

---

[1] A "runner" is an individual or entity that makes multiple purchases of new Sprint Phones on behalf of phone traffickers like Defendants. A "credit mule" is an individual or entity that signs up for wireless service with Sprint – never intending to comply with the terms of the agreement – to obtain new subsidized Sprint Phones for phone traffickers like Defendants. A copy of the Federal Trade Commission's June 2014 Consumer Credit Mule Warning is attached hereto as **Exhibit A.**

Additionally, as participants in the conspiracy, Defendants are liable for the harm caused to Sprint by the entire Scheme.

4.     The Scheme causes tremendous harm to Sprint and to consumers.  In addition to the pecuniary losses caused by Defendants' theft of Sprint's mobile devices, investment in the Phones, lost sales and market expenses, and lost expected customer revenue, Defendants' misconduct has harmed Sprint's relationships with its customers, dealers, retailers, and others. Defendants' Scheme also involves unlawfully accessing Sprint's protected computer systems and wireless network; trafficking of Sprint's protected and confidential computer passwords; willful infringement of Sprint's trademarks; and/or stealing legitimate customer upgrades.  Defendants, who falsely represent themselves as Sprint employees as part of their Scheme to access Sprint customer accounts to acquire product and service, are not only stealing from Sprint but are causing substantial damage to Sprint's brand, image, and reputation.

5.     Sprint seeks to recover damages for the harm caused by Defendants' Handset Theft and Trafficking Scheme, and to obtain an injunction prohibiting Defendants from continuing to perpetrate the Scheme.

6.     All conditions precedent to filing this action have been performed, waived or excused.

7.     Sprint has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

## PARTIES, JURISDICTION, AND VENUE

8.     This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

9.      Sprint Solutions, Inc. is a Delaware corporation, with its principal place of business in Reston, Virginia.

10.      Sprint Communications Company L.P. is a Delaware limited partnership, with its principal place of business in Overland Park, Kansas.

11.      Defendant Cassin N. Sam a/k/a Gucci Cassie ("Sam") is an individual and a resident of Brooklyn, New York and is personally engaged in, and helped facilitate, the improper conduct described herein.  Upon information and belief, Defendant Sam resides at 707 Miller Avenue, Apt. 3F, Brooklyn, New York 11207.

12.      Defendant Iquinda M. Cerisier ("Cerisier") is an individual and a resident of Brooklyn, New York and personally engaged in, and helped facilitate, the improper conduct described herein.  Upon information and belief Defendant Cerisier resides at 3204 Glenwood Road, Brooklyn, New York 11210.

13.      Ashley Anna Henry a/k/a Ashley-Anna Henry ("Henry") is an individual and a resident of Brooklyn, New York and personally engaged in, and helped facilitate, the improper conduct described herein.  Upon information and belief Defendant Henry resides at 1145 East 99th Street, Apt. 1, Brooklyn, New York 11236.

14.      Defendant Samuel G. Coley ("Coley") is an individual and a resident of Brooklyn, New York and personally engaged in, and helped facilitate, the improper conduct described herein.  Upon information and belief Defendant Coley resides at 1044 East 95th Street, Brooklyn, New York 11236.

15.      Defendant Jamila Carry ("Carry") is an individual and a resident of Brooklyn, New York and personally engaged in, and helped facilitate, the improper conduct described

herein.  Upon information and belief Defendant Carry resides at 100 Winthrop Street, Apt. 3E, Brooklyn, New York 11225.

16.     Upon information and belief, Jane and John Does 1-20 ("Doe Defendants") are individuals and residents of New York and are personally engaged in, and helped facilitate, the improper conduct described herein.  The Complaint will be amended to include the name or names of the Doe Defendants when such information becomes available.

17.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 because Sprint's claims for violation of the United States Trademark Act, Title 15 of the United States Code and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. arise under federal law and because diversity exists between the parties and the amount in controversy exceeds $75,000.00 exclusive of costs, fees, and interest.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Sprint's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

18.     Defendants are subject to the personal jurisdiction of this Court because they are residents of State of New York, or because they have conducted, engaged in and carried out business ventures within the State of New York; or have committed tortious acts within the State of New York; and have engaged in substantial and not isolated activity within the State of New York.

19.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants either reside in this district or a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## SPRINT'S BUSINESS MODEL

20.     Sprint and its affiliates offer a comprehensive range of telecommunications services to consumers, businesses, and government users.  Sprint currently serves more than 56 million customers nationwide, and is widely recognized for developing, engineering, and deploying innovative technologies.  The Sprint companies and affiliates highly value the outstanding business reputation they have worked hard to develop.

21.     Sprint's wireless program enables Sprint customers to choose from a variety of monthly voice and data plans for use on cutting edge devices on the Sprint wireless network.  In addition to being available through Sprint online, over the phone with authorized Sprint customer service representatives, and in its stores, Sprint Phones and wireless service are sold through authorized Sprint dealers and retailers around the country, with whom Sprint has contractual relationships.  In addition, Sprint customers with the proper security information can access their Sprint account to make changes, order equipment and services, identify an equipment delivery location, and make payments.

22.     Sprint protects access to its customers' accounts and their personal identifying information through the use of numerous security mechanisms, including secret PINs, passwords and/or security questions.  After a customer is authenticated through one or more of these security mechanisms, Sprint accesses the customer's account on its secure internal computers and allows the customer to place orders or make changes to his/her account.  The authorized customer can order devices or equipment to be shipped to any address provided by the customer.

23.     Sprint's business model is based upon Sprint's ability to deliver affordable, innovative, and desirable products and services to consumers.  Therefore, Sprint assists its customers in their acquisition of Sprint Phones for use on the Sprint network by selling the Phones for

substantially less than what Sprint pays to the manufacturers for the Phones.  Sprint recoups the money it loses on the Phones through revenue earned on the sale of Sprint service, which customers must use to transmit and receive voice, text, and data on the Sprint Phones.

24.     In addition to subsidizing Sprint Phones, Sprint also offers its customers the option of paying off the Phone in installments or leasing a Phone from Sprint, as well as providing discounts, rebates, and other incentive programs by which Sprint heavily invests in the Phones to the benefit of its customers.  These types of substantial subsidies and investment programs are not offered by telecommunications carriers outside the United States; instead, the consumer must pay full price for the phones from the manufacturers.  The full value of the Phone in the case of theft or the difference between the value and the subsidy price offered by Sprint is the profit sought by handset traffickers.

25.     Sprint Phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the Phones.  A copy of the Terms and Conditions is attached hereto as **Exhibit B**.  These Terms and Conditions are set forth in printed inserts that are included with the purchase of every Sprint Phone.

26.     To make its customers' experience as convenient as possible, Sprint provides various methods for its customers to manifest their agreement to the Terms and Conditions, depending on the type of service they obtain and the method and sales channel through which they activate their service.  In some cases, customers are asked to sign a written contract, in others they acknowledge their agreement orally by phone, and in other situations they may indicate their agreement by clicking the appropriate buttons on a website.  In the case of pay-as-you-go or prepaid service, customers confirm their agreement by purchasing a Phone in a package that conspicuously indicates that their purchase or use of the phone constitutes their agreement to the Terms and Conditions.  All of the methods used by Sprint for obtaining its customers' agreement

to the Terms and Conditions are legally valid and appropriate, and the Terms and Conditions constitute a valid and binding contract between Sprint and each of its customers.

27.     Sprint is able to offer its Phones to customers at reduced prices only if the Phones are used as intended on the Sprint wireless network.  Manufacturers that produce wireless phones for Sprint install proprietary software, requested and paid for by Sprint, on the Sprint Phones. Among other things, this software is intended to prevent the Phones from being used outside the Sprint network.

28.     Wireless technology is constantly changing and improving, and the wireless industry is intensely competitive.  Sprint expends substantial resources to maintain its position as an industry leader and to ensure that its network, handsets, and all of its products and services are at the cutting edge of the latest technological developments.  Providing its customers with the highest quality and most advanced technology is a key differentiator for Sprint and central to its business strategy.  Sprint is constantly and aggressively developing, engineering, and deploying innovative technologies to benefit its customers.

29.     Sprint invests heavily in efforts to provide its customers with the most up-to-date wireless handsets, and shoulders most or all of the cost of purchasing a new phone for its customers. Sprint makes phones available to new customers at a low cost when they initiate wireless service, and also provides new subsidized phones to existing customers at regular intervals.

30.     Sprint made a particularly significant and widely publicized investment for its customers in the Smartphone market.  As reported in The Wall Street Journal, Sprint agreed to buy 30.5 million iPhones from Apple over four years, at a cost of more than $20 billion.  Copies of newspaper articles discussing Sprint and the iPhone are attached hereto as **Composite Exhibit C**.  As the demand, and therefore, the price, for Smartphones in various world markets

skyrockets, Sprint's subsidized iPhones are a particularly attractive and lucrative target for participants in the Handset Theft and Trafficking Scheme.

31.     Sprint is continuously working to provide its customers with the latest in communications technology.  Sprint's practice of defraying the cost of handsets for existing customers is an essential part of its business model, and facilitates the upgrading of Sprint's network by helping to migrate customers from older technology phones to newer models.  Many of the various wireless transmission standards are not compatible with each other, so Sprint's customers must be upgraded to new Phones before Sprint can transition its network to the latest standard.  New handsets are also needed to utilize different radio frequencies and take advantage of Sprint's acquisition of wireless spectrum from various other companies, so as not to overwhelm Sprint's network and to allow for the most efficient service for all Sprint customers.  Stealing the investment in handset upgrades that Sprint intends to benefit its customers therefore harms Sprint not only by misappropriating its investment in the Phones but also by impeding Sprint's ability to upgrade its equipment and network facilities and efficiently and effectively serve its customers.

## SPRINT'S TRADEMARK RIGHTS

32.     Sprint Communications Company L.P. owns federal trademark registrations for the standard character and stylized Sprint® marks (collectively, the "Sprint Communications Marks").  Sprint Solutions, Inc. has been assigned the right to use and enforce the Sprint Communications Marks.  Copies of the certificates of registration issued by the United States Patent and Trademark Office are attached hereto as **Composite Exhibit D**.  The stylized Sprint Communications Marks are depicted below:

 

33.     Sprint has been assigned the right to use and enforce the standard character and stylized Virgin Mobile, payLo, Assurance Wireless and Boost Mobile trademarks (collectively, the "Assigned Marks"), the latter of which are depicted below:

  



The Sprint Communication Marks and Assigned Marks will collectively be referred to as the "Sprint Marks."

34.     Sprint uses the Sprint Marks on and in connection with its telecommunications products and services.

35.     Sprint Marks have become an intrinsic and essential part of the valuable goodwill and property of Sprint, who protects the Sprint Marks.  The Sprint Marks are well established and well known to customers and the trade as symbols identifying and distinguishing Sprint's products and services, and signifying distinctive products and services of high quality. Only Sprint and its expressly authorized, affiliated agents are permitted to use the Sprint Marks. The Sprint Marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with Sprint.

**DEFENDANTS' MISCONDUCT**

36.     Sprint has discovered that, although large quantities of its Phones are being purchased throughout the United States, a significant number of these Phones are not being used on the Sprint network.  Instead, entities and individuals such as Defendants and their co-conspirators, with no intention of lawfully connecting to or using the Sprint wireless network, are fraudulently acquiring and reselling new Sprint Phones in bulk quantities.  The Phones are acquired, either directly by Defendants or through their co-conspirators, through illicit means, such as through unauthorized orders on existing Sprint accounts, and then sold for a substantial profit and shipped directly overseas, where they can be used on other wireless carriers' networks, or shipped to other domestic traffickers, who add them to larger shipments headed overseas.  The Phones are usually taken out of their original packaging, and all accessories, warranties, and manuals are removed, before being shipped overseas.  The Phones are often unlocked by Defendants or their co-conspirators, to raise their value and prepare them for use on foreign carriers. Defendants undertake these actions for their own profit

37.     Once a Sprint Phone is unlocked and/or shipped overseas to be used on other wireless networks, Sprint no longer has a revenue source to recoup its investment on that Phone.

38.     If Sprint identifies a Phone as connected with theft, fraud, or other loss, the electronic serial number (ESN) is logged into Sprint's system and the Phone can no longer be used on the Sprint network.  This is done to protect Sprint from further harm and in an attempt to deter criminal activity.  The Phone is thereafter referred to in the handset trafficking community as having a "Bad ESN."  As it is no longer a functioning Sprint Phone, the only value of a Bad ESN Phone is in unlocking the handset for use on other networks and overseas resale.

39.     Defendants knowingly and willfully engaged in an enterprise that traffics in and resells new Sprint Phones.  Defendants use fraud and other illicit means to acquire Sprint Phones and sell those Sprint Phones through various co-conspirators.   While the complete extent of Defendants' activities in the Handset Theft and Trafficking Scheme is not yet known, Defendants are actively involved in several integral components of the conspiracy.

40.     Defendants are not authorized Sprint dealers or retailers employees, supervisors, managers, agents or representatives.  Defendants have no legitimate connection to Sprint.

41.     Since at least February 2012, Defendants have been actively engaged in the Handset Theft and Trafficking Scheme by, *inter alia*, acquiring and reselling large quantities of new Sprint mobile devices, including iPhones and iPads, through fraudulent orders placed on the accounts of legitimate Sprint customers, including business customers. Each Defendant actively participates in one or more aspects of the Scheme along with numerous co-conspirators.

42.     As part of their Scheme, Defendants call Sprint customer care and fraudulently identify themselves as another Sprint employee in customer care in need of access to a particular Sprint account for a legitimate purpose.  Defendants provide the Sprint representative with the phone number for the target account and any additional account information they have fraudulently obtained and then attempt to deceive the representative into providing access to the account or additional account information by using their knowledge of Sprint and its internal systems.   Sprint rigorously trains its representatives to identify and thwart fraudsters like Defendants who misrepresent their identity and use "pretexting" to attempt to unlawfully obtain information for the purpose of harming Sprint and/or its customers.   In perpetrating their Scheme, Defendants attempt to use all possible means to circumvent the training and security

provided by Sprint, including various combinations of fraud, intimidation, deception, harassment, and unauthorized access and changes to Sprint's computer systems.

43.     If Defendants come into unauthorized possession of customer account access information, they then call Sprint and fraudulently hold themselves out as the account holder or other person authorized to access, place orders, and make changes to the account.  Defendants use this unauthorized access to steal upgrades for new Sprint Phones or add lines of service and place unauthorized orders for new mobile devices charging the cost to stolen credit cards or the legitimate customer's account, without the customer's knowledge or consent.  Defendants have the new Sprint Phones shipped to one of their addresses or the addresses of their co-conspirators. As the equipment orders are unauthorized by the Sprint customers whose accounts were targeted by Defendants, in addition to the damage Sprint sustains as a result of having subsidized Products carrying Sprint Marks trafficked by Defendants in violation of Sprint's rights; for these stolen phones, Sprint never received any payment.

44.     In addition to placing fraudulent orders on legitimate Sprint customers' accounts and billing them to the unsuspecting Sprint customers, Defendants and their co-conspirators use stolen or fraudulently obtained credit card information to pay their personal Sprint account balances, including, *inter alia*, Defendant Cerisier's Sprint account as well as the account of a co-conspirator, and to order more Sprint equipment.  As these payments are fraudulent, once Sprint is aware of them, it must reverse the charges and, once again, Defendants have illegally obtained free Sprint service and new Sprint equipment at no cost, which they resell for their own profit.

45.     During its investigation into Defendants' actions, Sprint identified the phone numbers used by Defendants to call into Sprint customer care, which are registered to, *inter alia*, Defendants Cerisier and Henry.  During the calls into Sprint, many of which are recorded,

Defendants routinely change the account contact information to replace the legitimate account holder's information with that of Defendants, including the email addresses of Defendant Sam.

46.     Defendants also change the shipping address on the account and direct the numerous fraudulent orders they place to be shipped to one of at least fifty-seven (57) different residences in New York and North Carolina that are each associated with Defendants and/or their co-conspirators.  Upon information and belief, Defendants Sam and Cerisier have a network of co-conspirators, including Defendants Henry, Coley and Carry, who reside at the delivery locations and/or accept the shipments of fraudulently ordered new Sprint mobile devices at these various locations and then process the devices for resale by Defendants or other co-conspirators.

47.     In 2012, while Defendants Sam and Cerisier resided together at 103 Crop Court, Raeford, North Carolina, 28376 they began actively engaging in the Scheme.  From approximately March 2012 through June 2013, Defendants used Defendant Cerisier's phone to place frequent illicit calls to Sprint, as described above, which resulted in them fraudulently ordering and obtaining hundreds of new Sprint devices and products on the accounts of legitimate Sprint customers.  Each new item was shipped to Defendants at their North Carolina residence or to co-conspirators in New York.

48.     Upon information and belief, in 2013, Defendants Sam and Cerisier moved to Brooklyn, New York to continue the Scheme on a broader scale and as their Scheme grew they employed numerous co-conspirators, who are now all active participants in the Scheme.

49.     Investigators for Sprint have conducted surveillance at several of the residences in New York to which Defendants are directing their fraudulently ordered new Sprint equipment. Upon information and belief, based in part on this surveillance, each of the at least 57 delivery

locations is staffed with one or more of the Defendants and/or their co-conspirators who accept the deliveries of fraudulently order new Sprint devices in furtherance of their Scheme.

50.     For example, on or about February 13, 2015, investigators witnessed a delivery of fraudulently ordered new Sprint iPhones to a residence in Brooklyn.  Sprint determined that this one residence alone was the shipment location of at least four additional fraudulent orders placed on legitimate Sprint accounts in less than a month.  One of Defendants' co-conspirators was observed accepting the February 13th delivery and then he and Defendant Coley took the package to an unknown location where, upon information and belief, the Phones are collected and processed by Defendants for resale.

51.     As another example, on or about July 1, 2015, investigators witnessed Defendant Carry accept and sign for a shipment of fraudulently ordered new Sprint iPhones at another of Defendants' delivery locations in Brooklyn.  Investigators have observed several other deliveries of fraudulent equipment orders placed by Defendants on the accounts of legitimate Sprint customers to a number of Brooklyn addresses maintained by Defendants or their co-conspirators. Each delivery was accepted by one of Defendants' co-conspirators and, upon information, all of the devices were collected and processed for resale by Defendants for their own profit.

52.     To date, Sprint has been able to identify at least 162 individual fraudulent equipment orders encompassing hundreds of devices placed by Defendants and their co-conspirators on the accounts of legitimate Sprint customers, including business customers, as well as stolen service, resulting in excess of $675,000 in presently identifiable damages to Sprint.  Upon information and belief, once the full scope of Defendants' fraud activities are known, the actual numbers will be significantly higher.  Fortunately, Sprint, in vigilantly attempting to ferret out Defendants' fraud, has been able to identify several of the fraudulent orders in time to cancel them prior to shipment.

53.     Defendants' fraudulent activities have caused significant damage to Sprint.  In addition to the damage caused as result of the stolen equipment and damage to Sprint's Marks and business reputation, *inter alia*, on information and belief, Sprint lost important, legitimate Sprint customer accounts.

54.     Upon information and belief, this is only a portion of the fraud and illicit activity that Defendants and their co-conspirators are committing against Sprint and its customers.  As the equipment orders are unauthorized by the Sprint customers whose accounts were targeted by Defendants, in addition to the damage Sprint sustains as a result of having subsidized Products carrying Sprint Marks trafficked by Defendants in violation of Sprint's rights, for these stolen phones, Sprint never received any payment. Upon information and belief, Defendants have resold each of these new devices for their own profit and to Sprint's detriment.

55.     Furthermore, Sprint has incurred significant damages in its significant proactive efforts to identify and remediate the effects of Defendants' fraudulent conduct on Sprint and its customers' accounts.  Defendants' fraudulent activities have caused irreparable harm to Sprint's business, image and reputation and Sprint's remediation of Defendants' actions has caused Sprint to incur significant additional losses.

**SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT**

56.     Defendants' actions substantially harm Sprint in several ways, including *inter alia*: (1) Sprint is deprived of the opportunity to recoup its substantial investment in Sprint Phones; (2) Sprint is deprived of the opportunity to earn profits by providing wireless service to legitimate Sprint consumers; (3) Sprint is hampered in its ability to migrate its customers from older to newer technology through legitimate timely upgrades, which negatively impacts the efficiency of Sprint's wireless network speed; (4) Sprint's brand, image, and reputation are harmed by the inability to

timely remove old Phone models from circulation through legitimate upgrades; (5) Defendants' actions seriously and irreparably interfere with Sprint's relationships with its dealers, retailers, and customers; and (6) Defendants' infringement of the Sprint name and Marks causes significant ongoing and irreparable losses and harm to Sprint's brand, image, and reputation.  All of these factors undermine Sprint's competitive edge in the cellular phone industry.

57.     The conduct of Defendants, their unknown co-conspirators, and others who engage in the unlawful acquisition and resale of new Sprint Phones has also resulted in shortages of available Sprint Phones, particularly the most in-demand models.   This misconduct substantially harms Sprint and its relationship with dealers, retailers and consumers because Sprint is not able to supply sufficient handsets to satisfy the demand from legitimate consumers who, as a result, go elsewhere for their telecommunications services.

58.     Sprint suffers additional, irreparable harm when its Phones are removed, by Defendants or their co-conspirators, from the original packaging and altered because Sprint is deprived of the means to control the quality of its product.  This becomes especially damaging where a potential legitimate Sprint customer within the United States acquires a Phone from Defendants or their co-conspirators, that the customer believes is a genuine Sprint Phone, with all of the attendant benefits and is later disappointed in Sprint because the Phone does not work as intended on the Sprint network because it has been denominated a Bad ESN Phone or otherwise.  Furthermore, the process of unlocking and reselling a Sprint Phone voids the manufacturer's warranty on the device.  The unlocked repackaged Sprint Phones are then resold without the original manufacturer's warranty documentation.  Both consumers and Sprint are harmed when a Sprint Phone that has been altered or sold by Defendants or their co-conspirators is submitted for warranty repair.  Consumers who purchase Sprint Phones from Defendants or their co-conspirators are unable to obtain warranty

service in the event they experience problems with their Phones. As a result, Sprint's reputation suffers further.

59. Additionally, confused customers, relying on the Sprint Marks on the Phones they purchased from Defendants, look to Sprint to resolve their questions. Sprint incurs substantial costs associated with calls to its customer relations and department to resolve the issues created by Defendants.

60. Sprint's reputation is further damaged by its inability to assist those consumers who buy Sprint Phones from Defendants, because despite bearing the Sprint Marks, they are no longer valid Sprint Phones because the actions of Defendants and their co-conspirators voided the warranties and as Bad ESN phones, they cannot be activated on the Sprint network. Further, Sprint has spent significant time and effort, and the associated cost, for remedying Defendants' fraudulent actions within the Sprint system and attempting to resolve issues on legitimate Sprint accounts that were affected by Defendants' fraud.

61. Defendants' conduct has resulted in the dilution of the Sprint Marks; substantial harm to Sprint's business reputation and goodwill; a greater likelihood of confusion, mistake, and deception as to the source of origin of Sprint products unlawfully sold by the Defendants and confusion as to what if any relationship exists between Sprint and Defendants.

62. As set forth above, part of Defendants and their co-conspirators' Scheme includes stealing legitimate customer upgrades by, *inter alia*, fraudulently requesting the subsidized handset upgrades available on the legitimate Sprint customer accounts that they target and retaining those new devices while the legitimate customers are left with outdated devices. The practice of stealing upgrade Phones not only misappropriates Sprint's investment in the new Phones, intended for the customer, but also hinders Sprint's objective of regularly migrating

customers to newer devices that work more effectively on Sprint's updated networks.  This migration cannot occur when older devices remain in consumer circulation longer than intended. Defendants' conduct causes harm to Sprint's reputation with its customers, whose devices may no longer work on Sprint's network and other customers, who were defrauded out of their subsidized Phone upgrade, no longer have the ability to upgrade their phone if it breaks, and may blame Sprint and leave for another service provider.

63.     Defendants' Scheme also violates numerous state and federal identity theft, password-trafficking, and anti-phishing laws, including 18 U.S.C. § 1028(a)(7) (fraudulent transmission of identification information); 18 U.S.C. § 1029 (fraud in connection with access devices); 18 U.S.C. §1030 (fraud by computer); 18 U.S.C. §1341 (fraud by mail) and 18 U.S.C. §1343 (fraud by wire); and 18 U.S.C. §1346  (scheme to defraud), as well as the Telephone Records and Privacy Protection Act of 2006, 18 U.S.C. § 1039 ("TRAPPA"), which prohibits pretexting and other unauthorized access of telecommunications carriers' records.  Specifically, TRAPPA criminalizes, among other things: (a) making false or fraudulent statements or representations to an employee or a customer of a telecommunications carrier; (b) accessing a telecommunications customer's account without authorization; (c) the unauthorized sale or transfer of customer records or information; and (d) the unauthorized purchase or receipt of customer records and information.   As discussed above, Defendants' conspiracy involves precisely this type of criminal conduct.

## CIVIL LITIGATION AGAINST OTHER PHONE TRAFFICKERS

64.     Federal courts have recognized that conduct similar to Defendants' conduct is unlawful.

65.     In addition to Sprint, T-Mobile USA, Inc., TracFone Wireless, Inc., Nokia Corporation, and AT&T Mobility LLC have each filed multiple lawsuits in numerous federal courts across the country against other traffickers engaged in the practice of defrauding legitimate consumers by acquiring large quantities of wireless telephones and reselling them for profit.  Each of those companies has succeeded in obtaining Final Judgments and Permanent Injunctions.  Copies of several examples of Final Judgments and Permanent Injunctions are attached hereto as **Composite Exhibit E**.  A defendant in one case who continued trafficking in phones in violation of an injunction issued by the U.S. District Court for the Southern District of Texas was charged with criminal contempt of court and sentenced to serve 57 months in prison.  Copies of the Memorandum Opinion and Order of Contempt, Application for Criminal Contempt, the Order finding cause to believe the defendant is guilty of criminal contempt, and Judgment of Criminal Contempt are attached hereto as **Composite Exhibit F**.

## CRIMINAL INVESTIGATION AND
## PROSECUTION OF PHONE TRAFFICKING

66.     Phone traffickers like Defendants have been the subject of numerous criminal investigations and prosecutions across the country.  Some examples are:

a.     In August 2014, the United States Attorney for the District of Minnesota announced the indictment of 20 individuals engaged in the illegal acquisition and resale of tens of thousands of Smartphones to the black markets of the Middle East and China.  A joint task force comprised of the U.S. Secret Service, the Minnesota Financial Crimes Task Force, and the St. Paul Police Department investigated and then apprehended members of the "Mustafa Organization," who had been using runners, engaged in contract and subscription fraud, and robbery to acquire large quantities of subsidized phones for overseas resale.

b.      In March 2013, the California Attorney General charged two individuals with trafficking nearly $4M in wireless phones to Hong Kong over an 8 month period.

c.      On or about February 25, 2013, federal law enforcement authorities, including agents from the Federal Bureau of Investigation, the United States Secret Service, and the Bureau of Alcohol, Tobacco, Firearms and Explosives, raided a warehouse belonging to a phone trafficking company called Wireless Buybacks in Elkridge, Maryland, pursuant to a search warrant and found the facilities were being used to harbor stolen Sprint Phones.   Sprint filed suit against Wireless Buybacks and its affiliates the following day.

d.      On August 21, 2012, federal Homeland Security agents and SWAT teams conducted a raid on facilities operated by handset trafficker Ace Wholesale and on the home of the company's CEO, Jason Floarea.   Later the same day, Sprint filed suit in federal court against Ace Wholesale, Floarea, and several affiliated entities and persons asserting handset trafficking claims similar to those asserted here.   On October 16, 2014, Mr. Floarea, pled guilty to Interstate Transportation of Stolen Property, in part in connection with trafficking Sprint Phones.

e.      An FBI sting operation in Philadelphia that began with wireless phone trafficking resulted in the conviction of 16 individuals on terrorism charges, when it turned out that the proceeds from their phone trafficking and other illegal conduct was being funneled to the terrorist organization Hezbollah.

Copies of court documents, press releases, and news reports regarding these incidents are attached hereto as **Composite Exhibit G**.

## COUNT ONE

## UNFAIR COMPETITION

67.     Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

68.     Defendants' conduct in acquiring and/or inducing others to acquire the Phones, disabling or unlocking, inducing others to disable or unlock, and/or assisting others to disable or unlock the Phones, and reselling and/or assisting others to resell the Phones as new for activation on other wireless networks constitutes unfair competition under the common law of the State of New York.

69.     Defendants' conduct in selling, inducing others to sell, and/or assisting others to sell unlocked Sprint Phones undermines Sprint's subsidized incentive programs and constitutes unfair competition under the common law of the State of New York.

70.     Defendants' use of at least one of the Sprint Marks in connection with the sale of unlocked, counterfeit Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products and services, and the relationship between Sprint and Defendants.  Thus, Defendants have also engaged in unfair competition with Sprint in violation of the common law of the State of New York by selling and/or offering, and promoting their products with the intention of trading upon the goodwill established by Sprint and are thereby misappropriating the benefits of substantial effort and money expended by Sprint in establishing its rights in and to the Sprint Marks.

71.     Defendants' actions were done in bad faith; they were intentional, malicious, and willful, and have caused substantial harm to Sprint.

72.     Sprint is entitled to appropriate relief, including injunctive relief.

## COUNT TWO

### TORTIOUS INTERFERENCE WITH PROSPECTIVE
### BUSINESS RELATIONS AND ECONOMIC ADVANTAGE

73.     Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

74.     A business relationship, and an expectancy of business relationships, exists between Sprint and authorized dealers of Sprint Phones.

75.     A business relationship, and an expectancy of business relationships, exists between Sprint and authorized retailers of Sprint Phones.

76.     A business relationship, and an expectancy of business relationships, exists between Sprint and current and prospective Sprint customers, including business customers.

77.     There is a high probability of future economic benefit to Sprint as a result of these current and prospective business relationships.

78.     Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these current and prospective business relationships between Sprint, authorized dealers and retailers who sell Sprint products, and legitimate Sprint customers or prospective customers.

79.     Specifically, but without limitation, Defendants knew that Sprint has business relationships, and an expectancy of business relationships, with legitimate consumers of Sprint Phones and wireless service.  Defendants interfered with these relationships by engaging in the Handset Theft and Trafficking Scheme and causing, at least in part, Sprint to have an insufficient supply of Sprint Phones available to meet legitimate consumer demand.

80.     Defendants also knew that Sprint has business relationships with authorized dealers and retailers of Sprint Phones to provide said dealers with sufficient quantities of Sprint

Phones for their legitimate consumers' use exclusively on Sprint's wireless network. Defendants' Scheme has resulted in substantial numbers of Sprint Phones that are never activated on Sprint service and has further caused shortages of available Sprint Phones, thereby substantially harming Sprint and its relationship with its authorized dealers and retailers because Sprint is unable to supply dealers with sufficient Phones to satisfy the demands from legitimate consumers.

81.     Defendants also knew that Sprint has business relationships with legitimate Sprint customers to provide them with Phones and service on the Sprint network.

82.     Defendants are intentionally interfering with Sprint's business relationships and prospective advantages through improper means and in violation of the law.

83.     Defendants engaged in the acts of interference set forth herein with a conscious desire to prevent the relationships from occurring or continuing, or Defendants knew that the interference was certain or substantially certain to occur as a result of their conduct.

84.     As set forth fully below, Defendants' intentional interference was committed through the use of fraud and fraudulent misrepresentations to Defendants' direct benefit and to the detriment of Sprint.

85.     Defendants' acts injured Sprint's business relationships.

86.     Sprint has been proximately damaged and continues to be damaged as a result of Defendants' interference.

87.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' tortious interference.

## COUNT THREE

### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

88.    Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

89.    A contractual relationship for a specific term exists between Sprint and authorized dealers and retailers of Sprint Phones.

90.    A contractual relationship exists between Sprint and its customers, the purchasers of Sprint Phones and wireless service.

91.    Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these contracts between Sprint, and its authorized dealers and retailers and legitimate Sprint customers.

92.    Specifically, but without limitation, Defendants knew that Sprint has contractual relationships with legitimate consumers of Sprint Phones and wireless service.  Defendants interfered with these relationships by, *inter alia*, inducing runners and credit mules or other purchasers of Sprint products to breach their contracts with Sprint.

93.    Defendants also knew that Sprint has contractual relationships with authorized dealers and retailers of Sprint Phones under which these dealers and retailers will promote and sell Sprint products solely for activation on the Sprint network.  On information and belief, Defendants and/or their co-conspirators induce authorized Sprint dealers and retailers to breach their agreements with Sprint and provide new Sprint Phones to Defendants for a purpose other than activation on the Sprint network and at a financial loss to Sprint.

94.     Defendants engaged in the acts of interference set forth herein with a conscious desire to induce breach of contract, or Defendants knew that breach of contract was certain or substantially certain to occur as a result of their conduct.

95.     Sprint has been proximately damaged and continues to be damaged as a result of Defendants' interference.

96.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' tortious interference.

**COUNT FOUR**

**CONSPIRACY TO COMMIT FRAUD
AND FRAUDULENT MISREPRESENTATION**

97.     Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above and Paragraphs 100-108 below as though fully set forth herein.

98.     An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to unlawfully acquire, traffic, and resell unlawfully unlocked and altered Sprint Phones under at least one of the Sprint Marks, which results in federal common law and statutory trademark infringement, common law unfair competition, contributory trademark infringement, tortious interference with business relationships and prospective advantage, unjust enrichment, and violations of the Computer Fraud and Abuse Act, among other things.

99.     Each Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Complaint.

100.    Sprint has been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

101.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' conspiracy.

## COUNT FIVE

## UNJUST ENRICHMENT

102.     Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

103.     By fraudulently acquiring new Sprint Phones through outright theft for use on wireless networks other than Sprint's network, Defendants have obtained benefits from Sprint which have caused significant harm to Sprint and resulted in significant financial gain to Defendants through their resale of the illicitly-acquired new Sprint Phones.

104.     Defendants have fraudulently acquired the benefits voluntarily and with full knowledge of the benefits.

105.     Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying Sprint the value of the benefits Defendants acquired.

106.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' unjust enrichment.

## COUNT SIX

## COMMON LAW FRAUD AND FRAUDULENT MISREPRESENTATION

107.     Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

108.     As part of the Handset Theft and Trafficking Scheme, each of the Defendants, directly or indirectly through co-conspirators, regularly and systematically misrepresents and makes fraudulent statements to Sprint that they are employees of Sprint, that they are legitimate Sprint account holders or other persons authorized to access and make changes to the accounts, that the Phones are being acquired by a legitimate account holder for a legitimate purpose, that

the Phones will be used on Sprint's wireless network, that the purchases are authorized by the Sprint account holder, and that they will perform in accordance with the Terms and Conditions.

109.    On information and belief, each Defendant participated in defrauding Sprint, and its legitimate customers, retailers, and dealers, to acquire new Sprint Phones and devices, including the models identified *supra*, for unlocking, resale, and ultimately for shipping overseas.

110.    Defendants knowingly and intentionally misrepresent themselves as employees of Sprint and as Sprint account holders for the purpose of inducing Sprint to rely on these gross misrepresentations to fraudulently obtain Sprint Phones which they know were not authorized and will not be used in accordance with the Terms and Conditions.

111.    When Defendants, directly or through their co-conspirators, acquire Sprint Phones as part of the Scheme, they know they do not have authority to access and order Sprint Phones on the legitimate Sprint accounts, do not intend to use the Phones for a legitimate purpose or to activate them or maintain them as active on Sprint's wireless network, or otherwise perform in accordance with the Terms and Conditions.

112.    Defendants and their co-conspirators know that they are not authorized to order Sprint Phones on the legitimate Sprint accounts, and that they are required to activate the Sprint Phones for use on the Sprint wireless network, pay the monthly service charges, and otherwise comply with the Terms and Conditions.

113.    Defendants intend for Sprint to rely on their misrepresentations, and/or the misrepresentations of their co-conspirators, including account verification information such as PINs and passwords, that allow Defendants to access the accounts and to acquire and unlock Phones for improper purposes.

114.    Sprint's reliance on the misrepresentations of Defendants and their co-conspirators was reasonable under the circumstances.

115.    Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

116.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' fraud.

### COUNT SEVEN

**TRAFFICKING IN COMPUTER PASSWORDS**
**18 U.S.C. § 1030(a)(6)**

117.    Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

118.    The Sprint Phones that are trafficked by Defendants are loaded with confidential codes/passwords that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, "Sprint's protected computer networks").  As such, the Phones act as a gateway to Sprint's protected computer networks.  Sprint restricts access to these protected computer networks through, among other things, the confidential codes/passwords contained in the Phones and the confidential codes and security PINs protecting Sprint accounts ("security codes").

119.    Through their Scheme, Defendants are knowingly trafficking in the confidential codes contained in the Phones and the associated security codes with the intent to defraud Sprint.

120.    Defendants' use of fraud and misrepresentation to acquire the security codes and encoded Phones from Sprint voids the purchase agreement and any legitimate access to Sprint's computer networks.  As such, Defendants' access into Sprint's protected computer networks is not authorized in any way.

121.    Upon information and belief, once Defendants illicitly acquire the Sprint Phones, they use Sprint's confidential codes/passwords to gain additional access to Sprint's protected computer networks.  This additional access into Sprint's protected computer networks is not authorized in any way.  Upon information and belief, Defendants share these confidential codes/passwords and methodologies for unlocking Sprint Phones among themselves and with their co-conspirators.

122.    Upon information and belief, Defendants acquire the unlocking codes/passwords and methodologies for unlocking Sprint Phones by misrepresenting to Sprint, either directly or through one of their co-conspirators, that the Phones are being acquired and unlocked for a legitimate purpose for use by legitimate consumers on Sprint's computer networks, when in fact, they are not.

123.    Upon information and belief, Defendants unlawfully access Sprint's protected computer networks using Sprint's confidential codes/passwords to:  (1) make  unauthorized changes to  customer accounts; (2) place unauthorized orders for equipment and service; (3) perform various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network; and/or (4) unlock the Sprint Phone, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in Sprint Phones and unauthorized changes to Sprint's protected computer networks, so that the Sprint Phone will operate on other wireless networks.

124.    Through the Scheme, Defendants are knowingly trafficking in the confidential codes/passwords contained in the Phones and security codes with the intent to defraud and harm Sprint.

125.    Defendants' transfer of the Phones and confidential codes to others constitutes "trafficking" of the codes as defined in 18 U.S.C. § 1029 in that the codes/passwords were

transferred, or otherwise disposed of, to others, or Defendants obtained control of the codes/passwords with intent to transfer or dispose of them.

126.    Defendants' trafficking of the Phones substantially affects interstate commerce and communication in that the codes/passwords contained in the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's protected computer networks are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

127.    Defendants' trafficking of Sprint's codes/passwords has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

128.    With respect to loss, Sprint has spent well in excess of $5,000 over a one-year period assessing its hacked protected computer networks for damage and taking steps to upgrade Sprint's protected computer networks' defenses to prevent future unauthorized access by Defendants and/or their co-conspirators.

129.    Also with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period investigating Defendants' intrusions into Sprint's protected computer networks, assessing the possible impairment to the integrity of its protected computer networks, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones and security codes, as well as tracking down fraudulently sold Phones.

130.    Moreover, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period in costs in order to discover Defendants' identities and/or the methods by which Defendants' access Sprint's protected computer networks without authorization.

131.     With respect to damage, by infiltrating the Sprint computer and telecommunications network and collecting and disseminating the illegally activated Phones and codes/passwords, Defendants have substantially impaired the integrity of Sprint's protected computer networks in an amount in excess of $5,000.  Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its products and services.

132.     Defendants' activities constitute trafficking in computer passwords in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6).

133.     Defendants' conduct is intentional, malicious and willful.

134.     Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief for the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT NINE

### UNAUTHORIZED ACCESS
### 18 U.S.C. § 1030(a)(5)(C)

135.     Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

136.     The Sprint Phones that are acquired by the Defendants, directly and/or from their co-conspirators in furtherance of the Scheme, are loaded with codes/passwords that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, "Sprint's protected computer networks").  Moreover, Sprint protects its customer accounts and its proprietary

computer system by requiring personal identifying information, such as PINs, passwords, and/or social security or other information to access, make changes, or place orders on customers' accounts ("security codes").

137.   Sprint Phones are connected to and activated on Sprint's protected computer networks when purchased from Sprint.

138.   Sprint's proprietary computer system holds confidential information and provides access to Sprint customer accounts.  It is connected to the internet, and assists in providing federally-regulated telecommunications services.  Sprint's computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

139.   Through fraudulent means, Defendants and their co-conspirators improperly obtain the identifying security information necessary to access, place orders, and make changes to Sprint accounts.

140.   Defendants knowingly and with the intent to defraud, cause Sprint to access its proprietary computer systems.  Defendants are not authorized to do so.

141.   Further, by illicitly acquiring and unlocking the Phones, Defendants necessarily access the Sprint protected computer networks because the Phones are connected to those networks when acquired from Sprint.

142.   Defendants use fraud and misrepresentation to acquire the Phones from Sprint, and, as such, Defendants' access of Sprint's protected computer networks is not authorized in any way.

143.   Upon information and belief, when Defendants acquire a Sprint Phone from runners and/or credit mules acting on their behalf, Defendants carefully examine the Phone, turn

it on, and perform various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network and that the various electronic code numbers and access numbers loaded on the Phone are correct.  This too constitutes unauthorized access of Sprint's protected computer networks via a password obtained through fraud and misrepresentation.

144.    By trafficking in activated Sprint Phones, the Defendants are also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

145.    Defendants' illegal and unauthorized access of Sprint's protected computer systems allows them to improperly steal Sprint's investment in its Phones.

146.    Through this improper access, Defendants knowingly cause Sprint to make changes to customer accounts that Sprint would not otherwise make, such as adding additional phone lines, stealing upgrades, or placing orders for equipment.

147.    Defendants' activities substantially affect interstate commerce and communication in that the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

148.    Defendants' unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

149.    With respect to loss, Sprint has lost its investments in the stolen Phones and security codes and spent well in excess of $5,000 investigating and assessing the possible

impairment to the integrity of its protected computer systems, taking remedial action to counteract Defendants' intrusions, and conducting a damage assessment regarding Defendants' unauthorized access of customer accounts and collection and dissemination of Sprint Phones, as well as tracking down fraudulently sold Phones and attempting to resolve customer disputes.

150.    Moreover, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period in costs to discover Defendants' identity and/or the method by which Defendants' accessed Sprint's protected computer networks without authorization.

151.    With respect to damage, by infiltrating the Sprint computer systems and collecting and disseminating the illegally trafficked Phones and security codes, Defendants have substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000. Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its product and service, and have stolen Sprint's financial investment in its Phones.

152.    Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

153.    Defendants' conduct is intentional, malicious and willful.

154.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT TEN

### UNAUTHORIZED ACCESS WITH INTENT TO DEFRAUD
### 18 U.S.C. § 1030(a)(4)

155.   Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

156.   Sprint protects access to its proprietary computer system, by requiring personal identifying information, such as PINs, passwords and/or social security numbers, to make changes to its customers' accounts.

157.   Sprint's proprietary computer system stores confidential information.   It is connected to the internet, and assists in providing federally-regulated telecommunications services.   Sprint's computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

158.   Through fraudulent means, Defendants and their co-conspirators improperly obtain customer information, including confidential PINs, passwords and/or social security numbers, and other identifiers necessary to access and make changes to its customers' accounts.

159.   Using these improperly obtained "pass-codes," Defendants knowingly and with the intent to defraud, cause Sprint to access its proprietary computer systems and make unauthorized changes to Sprint accounts.   Defendants are not authorized to do so.   Defendants' conduct also exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Defendants access Sprint's proprietary computer systems and Sprint accounts by misrepresenting that they are authorized to access such systems, and Defendants use such access to alter customer accounts, change access, and place orders for Sprint products in the Sprint computer system (which they were not entitled to alter or obtain).

160.    Sprint's customer accounts and proprietary computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

161.    Through this improper access, Defendants knowingly further their fraudulent Handset Theft and Trafficking Scheme and cause Sprint to make changes to customer accounts that Sprint would not otherwise make, such as adding lines of service, changing the address or email address on the account, and ordering equipment.

162.    By means of the above-described conduct, Defendants further their fraudulent Scheme to obtain handsets, service, and other benefits with significant value for their profit and to the detriment of Sprint and its customers.

163.    Defendants' activities substantially affect interstate commerce and communication in that the stolen Phones and improperly accessed accounts and proprietary computer systems are all used in and affect interstate commerce and communication.

164.    Defendants' unauthorized access of Sprint's customer accounts and protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively -- substantially in excess of $5,000 over a one-year period.

165.    With respect to loss, Sprint has spent well in excess of $5,000 over a one-year period assessing its hacked protected computer networks for damage and taking steps to upgrade Sprint's protected computer networks' defenses to prevent future unauthorized access by Defendants and/or their co-conspirators.

166.    In addition, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period identifying the impairment of or damage to Sprint's protected computer networks that Defendants' and/or their co-conspirators accessed with authorization.

167.    Further, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period in costs associated with investigating Defendants' and/or their co-conspirators' intrusions into Sprint's protected computer networks and taking subsequent remedial measures.

168.    Moreover, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period in costs in order to discover Defendants' identity and/or the method by which Defendants' accessed Sprint's protected computer networks without authorization.

169.    With respect to damage, by infiltrating the Sprint computer network and stealing service and equipment, disseminating illegally obtained Phones, and changing legitimate customer account information, Defendants have substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000. Moreover, Defendants' actions have deprived Sprint of the opportunity to control the quality of its products and service, as well as to earn revenue from legitimate customers, and to recoup Sprint's investment in the Phones stolen by Defendants.

170.    Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

171.    Defendants' conduct is intentional, fraudulent, malicious and willful.

172.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause

(I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated is at least $5,000 in value.

## COUNT ELEVEN

### FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114 [§ 32(1) of the Lanham Act]

173.     Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

174.     Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of certain federally-registered Sprint Communications Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, counterfeit Sprint Phones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

175.     Defendants' and/or their co-conspirators' use of certain federally-registered Sprint Communications Marks in connection with the sale of Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' infringing products, and the relationship between Sprint Communications and Defendants.

176.     Defendants' and/or their co-conspirators' unauthorized use of certain federally-registered Sprint Communications Marks in connection with their fraudulent enterprise to steal from Sprint and its customers is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of Sprint Communications.

177.     Defendants' and/or their co-conspirators' use of certain federally-registered Sprint Communications Marks in connection with the unlocked, counterfeit Sprint Phones,

which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, and have been flagged as "Bad ESN" Phones and not able to be activated on the Sprint network, constitutes a misappropriation of Sprint Communications' distinguishing and identifying federally-registered trademarks that were created as a result of significant effort and expense by Sprint Communications over a long period of time.

178. Defendants' and/or their co-conspirators' use of certain federally-registered Sprint Communications Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with Sprint Communications, and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint Communications.

179. In committing the foregoing acts in commerce, Defendants, who fraudulently represent themselves as Sprint employees and customers, have damaged, and will continue to damage, Sprint Communications and the reputation and goodwill of Sprint Communications, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint Communications.

180. Sprint Communications is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

181. Defendants' aforesaid acts constitute willful infringement of Sprint Communications' aforementioned federally registered trademarks in violation of 15 U.S.C. § 1114.

## COUNT TWELVE

**FEDERAL COMMON LAW TRADEMARK INFRINGEMENT**
**AND FALSE ADVERTISING**
**15 U.S.C. § 1125 (a)(1)(A) and (B) [§ 43(a) of the Lanham Act]**

182.     Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

183.     Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of at least one of the Sprint Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, counterfeit Sprint Phones, which downstream customers will discover have been altered from their original state, are inoperable on the Sprint network, and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

184.     Defendants' and/or their co-conspirators' use of at least one of the Sprint Marks in connection with the sale of unlocked, counterfeit Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products, and the relationship between Sprint and Defendants.

185.     Defendants' and/or their co-conspirators' unauthorized use of at least one of the Sprint Marks in connection with their fraudulent enterprise to steal from Sprint and its customers is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of Sprint.

186.     Defendants' and/or their co-conspirators' use of at least one of the Sprint Marks in connection with the unlocked, counterfeit Sprint Phones, which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, and may have been flagged as "Bad ESN" Phones and not able to be activated on the Sprint network,

constitutes a misappropriation of at least one of the distinguishing and identifying Sprint Marks that was created as a result of significant effort and expense.

187.    Defendants' and/or their co-conspirators' use of at least one of the Sprint Marks, coupled with their false representations as Sprint employees and customers, evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with Sprint, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint.   Defendants are not connected, employed by, or otherwise affiliated with Sprint in any way.

188.    Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Sprint and the reputation and goodwill of Sprint, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint.

189.    Sprint is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

190.    Defendants' use of at least one of the Sprint Marks in commercial advertising or promotion misrepresents the nature, characteristics, and/or qualities of their infringing products. Defendants' advertising and promotion is false or misleading.   Defendants' advertising and promotion deceives or has the capacity to deceive consumers.  The deception and misrepresentations have a material effect on the purchasing decisions and affect interstate commerce.

191. Defendants' activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B).

192. Sprint is entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

193. Defendants knew or should have known that Plaintiffs are the owners and/or authorized licensees of the Sprint Marks and that Defendants had no legal right to use any of the Sprint Marks on their infringing products.

194. Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages and an award of Plaintiffs' lost profits, Defendants' profits, and Plaintiffs' attorneys' fees.

## COUNT THIRTEEN

### CONTRIBUTORY TRADEMARK INFRINGEMENT

195. Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

196. By misappropriating and using at least one of the Sprint Marks in connection with the Scheme, Defendants knowingly aided and enabled distributors and/or sellers of their products to market them to members of the general public in a way that infringes at least one of the Sprint Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

197. Defendants' unlawful, unauthorized, and unlicensed sale of the unlocked Sprint Phones has contributed to the creation of express and implied misrepresentations that the Sprint Phones, as sold by Defendants, who falsely represent themselves as Sprint employees and

customers, were created, authorized or approved by Sprint, may be activated on the Sprint network, and include warranties.

198.     Upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers who purchase Sprint Phones altered by Defendants to believe that they are purchasing handsets approved by Sprint that can be activated on the Sprint network and containing original warranties.

199.     Defendants' conduct constitutes contributory infringement in violation of the Trademark Act.  Defendants' conduct is intentional, malicious, and willful.

200.     Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

201.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' actions.

## COUNT FOURTEEN

### CONVERSION

202.     Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

203.     Defendants have and are engaged in acts of conversion in violation of the law of the State of New York.

204.     Sprint has the right to provide its Phones and wireless service to the public. Defendants have no such privilege or right.

205.     Defendants knew or should have known that they obtained the Phones through illegitimate means and had no legal right to advertise, use or resell them.

206.     Defendants are wrongfully interfering with Sprint's rights by engaging in the Handset Theft and Trafficking Scheme.

207.     Defendants intentionally and willfully exerted dominion and ownership over the Sprint Phones.

208.     Defendants' conversion of Sprint's property has caused and continues to cause Sprint to suffer irreparable injury, loss of reputation, and exemplary damages to be proved at trial.  Unless enjoined by this Court, Defendants will continue these acts, thereby causing Sprint further immediate and irreparable damage.

## COUNT FIFTEEN

### FALSE ADVERTISING IN VIOLATION OF N.Y. GEN. BUS. LAW § 350, ET SEQ.

209.     Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

210.     Defendants have used and are using the Sprint Marks in connection with their illegal Handset Theft and Trafficking Scheme.  Accordingly, Defendants have made and are making express and implied misrepresentations that their businesses, websites, products and/or services originate with, are associated with, and/or are sponsored or endorsed by Sprint in such a manner as to create a likelihood of confusion among consumers, thereby inducing the belief that, contrary to fact, Defendants are sponsored or otherwise approved by or connected with Sprint.

211.     In making representations that their products, services and advertisements originate with or are endorsed or sponsored by Sprint by displaying the Sprint Marks in their advertisements, the Defendants knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading and so acted in violation of N.Y. Gen. Bus. Law § 350, *et seq.*

212.     Defendants' actions in connection with the illegal Handset Theft and Trafficking Scheme have caused specific and substantial injury to the public over and above ordinary trademark infringement as more particularly set forth above.

213.     Defendants acted without consent from Sprint and Defendants' conduct has resulted in substantial harm to Sprint as more particularly set forth above.

214.     Sprint requests permanent injunctive relief against Defendants pursuant to N.Y. Gen. Bus. Law § 350, *et seq*.

## COUNT SIXTEEN

## DECEPTIVE ACTS AND PRACTICES
## IN VIOLATION OF N.Y. GEN. BUS. LAW § 349

215.     Sprint reasserts the allegations set forth in Paragraphs 1 through 62 above as though fully set forth herein.

216.     Defendants have and are engaged in fraudulent acts or practices in violation of the prohibition against deceptive acts and practices found at N.Y. Gen. Bus. Law § 349.

217.     Defendants have used and are using the Sprint Marks in connection with the above-described Scheme in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of their products and services.  The use of the Sprint Marks by Defendants creates an unreasonable risk that present and potential consumers may falsely conclude that there exists some affiliation, connection, or association between and among Sprint and Defendants.

218.     Defendants' deceptive acts are directed at consumers, are misleading in a substantial and material way, and have caused injury to Sprint and its customers as more particularly set forth above.

219.    Defendants had actual knowledge of Sprint's rights at the time they decided to use the Sprint Marks in connection with the Scheme.  Thus, Defendants acted willfully and deliberately.

220.    Defendants' unfair business practices are of a recurring nature and harmful to consumers and the public at large, as well as to Sprint.  These practices constitute unlawful, unfair, fraudulent, and deceptive business practices, and unfair, deceptive, untrue, and misleading advertising.

221.    Defendants' actions in connection with the illegal Scheme have caused specific and substantial injury to the public over and above ordinary trademark infringement as more particularly set forth above.

222.    Defendants acted without consent from Sprint and Defendants' conduct has resulted in substantial harm to Sprint as more particularly set forth above.

223.    Sprint requests permanent injunctive relief against Defendants pursuant to N.Y. Gen. Bus. Law § 349.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

WHEREFORE, Plaintiffs, Sprint Solutions, Inc. and Sprint Communications Company L.P., respectfully request that this Court enter final judgment and permanent injunctive relief in favor of Plaintiffs and against Defendants, as follows:

(a) awarding Plaintiffs their compensatory, consequential, statutory and special damages including, without limitation, their lost profits, Defendants' profits, loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre and post judgment interest, as provided by law;

(b) awarding Plaintiffs their reasonable attorneys' fees and costs associated with this action;

(c) granting permanent injunctive relief in favor of Plaintiffs and against Defendants enjoining Defendants from engaging in the unlawful practices described in this Complaint;

(d) requiring Defendants, pursuant to the Lanham Act, to deliver to Plaintiffs their entire inventory of phones and products bearing or infringing the Sprint Marks or a confusingly similar copy thereof; and

(e) granting such further relief as this Court deems just and proper.

Respectfully submitted this 10th day of August, 2015.

By: */s/ Jennifer A. Yasko*
Jennifer A. Yasko (JY 4034)
Email: jyasko@CFJBLaw.com
James B. Baldinger
Florida Bar No. 869899
Email: jbaldinger@CFJBLaw.com
*To be admitted pro hac vice*
Stacey K. Sutton
Florida Bar No. 0289530
Email: ssutton@CFJBLaw.com
*To be admitted pro hac vice*
**CARLTON FIELDS JORDEN BURT, P.A.**
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida  33401
Phone: (561) 659-7070
Fax: (561) 659-7368

Gail E. Podolsky
Georgia Bar No. 142021
Email: gpodolsky@CFJBLaw.com
*To be admitted pro hac vice*
**CARLTON FIELDS JORDEN BURT, P.A.**
One Atlantic Center
1201 West Peachtree Street, Suite 3000

Atlanta, Georgia 30309
Phone: (404) 815-2714
Fax: (404) 815-3415

*Attorneys for Sprint Solutions, Inc. and*
*Sprint Communications Company L.P.*